FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

'99 DEC 14 PM 4:18

CLERK U. S. DISTRICT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

PEGGY E. JUSTUS, as an individual, and
JOE REDNER, as an individual

      Plaintiffs,

vs.                                                CASE NO. 99- *99-285-CIV-T-17E*

THE CITY OF TAMPA, FLORIDA, an incorporated
municipality of the State of Florida.

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES AND FOR ATTORNEYS' FEES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, PEGGY E. JUSTUS, an individual, and JOE REDNER, an

individual, who for their cause of action against the Defendants, states as follows:

### PRELIMINARY STATEMENT

1.    This is an action brought by Plaintiffs, PEGGY E. JUSTUS (hereinafter JUSTUS)

an individual who performs movements to music which include incidental contact between human

beings and which performances are viewed by other patrons of the "adult entertainment"

establishment in which she performs. JOE REDNER (hereinafter REDNER), an individual, operates

adult entertainment establishments within the City of Tampa. The adult entertainment establishments

operated by REDNER, include as a primary component of their operation, the presentation of

individuals who perform movements to music which include basic contact between human beings

1



and which are viewed by other patrons of the adult entertainment establishment in which such performed movements occur. This activity, for the purposes of this action, is colloquially referred to as "lap dancing." The City of Tampa has adopted what has been referred to as a "no contact" Ordinance, Ordinance No. 99-265(attached hereto as Exhibit "A"), previously designated as File No. E99-8 Ch 14. This Ordinance specifies that "(N)o person within an adult use shall, within six (6) feet of another person, display or expose any specified anatomical area or engage in any specified sexual activity..." The subject Ordinance describes, as its purpose, a concern with the alleged transmission of "sexually transmitted diseases" and alleged criminal activity identified as "prostitution and lewd and lascivious acts," attributable to the subject movements, to music which include the "incidental contact" between human beings and which are viewed by other patrons of the adult entertainment establishment in which the individuals perform.

2.    The adoption of the Ordinance prohibits activities **unreasonably** in that the prohibition of contact between human beings does not satisfy even the most rudimentary test of "reasonableness," a requirement for the valid exercise of the "Police Power." In addition, the actions of the Defendant (City) were undertaken with the specific intent of depriving Plaintiffs, JUSTUS and REDNER, and all others similarly situated, including all dancers and patrons of REDNER related establishments and all establishments similarly situated, of the exercise of Constitutionally protected rights, through state action and under color of state law.

3.    The Ordinance at issue provides criminal penalties for both harmless and innocent human contact, and also penalizes an innumerable number of forms of conduct (both protected and unprotected) which can (and do) occur in the prohibited area between any "point of contact" and the six-foot "no man's land" surrounding any subject individual, particularly if such individual is

2

exposing any "specified anatomical areas," whether patron or performer. The restrictions imposed by the subject Ordinance criminalize the participation in and/or exercise of Constitutionally protected activities, including the criminalization of protected associational activities.

4.     As a direct and proximate result of the imposition and enforcement of Ordinance 99-265, the Plaintiffs will suffer direct and immediate damages due to the fact that Plaintiff JUSTUS cannot perform the activities described above, resulting in a loss of her "business" and revenue, and Plaintiff REDNER cannot provide a forum for the activities described above without being unreasonably limited in the number of performers and/or patrons that can be allowed or accommodated within the subject adult entertainment establishments.

## II. JURISDICTION AND VENUE

5.     This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiffs' rights, privileges and immunities under the Constitution of the United States pursuant to Title 42 U.S.C. §§ 1983, and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution. This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331. This Court additionally has jurisdiction under 28 U.S.C. §1343(a)(4), granting the district court jurisdiction to award damages, equitable, and other relief under any act of Congress and providing for the protection of civil rights. This Court further has jurisdiction to issue declaratory relief where, as here, it otherwise has jurisdiction over a case or controversy, as well as the power to issue

3

injunctions pursuant to Rule 65 of the Federal Rules of Civil Procedure.

6.     This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties, involving the constitutional validity and application of Ordinance 99-265, (hereinafter referred to as the Ordinance). There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the various provisions of the Ordinance, and the issue as to whether the entire Ordinance itself, as adopted by Defendant, City of Tampa, through the use of "state" procedures, violates the rights of Plaintiffs under the First, Fourth, Fifth, Eighth and Fourteenth Amendments and Article I, Section 10 of the United States Constitution.

7.     Under this Court's jurisdiction, Plaintiffs seek to obtain declaratory judgment, declaring Ordinance 99-265 to be invalid and unconstitutional because the provisions of the Ordinance, in whole or in part, as adopted and applied by Defendant, City of Tampa; (i) denies due process in that it restricts harmless conduct without a reason, and fails any "reasonableness" test, in that it restricts conduct that cannot be shown to contribute to the problems complained of within the Ordinance (prostitution, disease and lewd acts); (ii) denies Plaintiffs' federal constitutionally protected rights of free speech and expression in that it does eliminate, prevent, chill and discourage Plaintiffs from offering to the public constitutionally protected performances; (iii) infringes upon Plaintiffs' rights to association and assembly; (iv) denies freedom from unreasonable searches and seizures; (v) imposes excessive fines, forfeitures and/or imprisonment; (vi) interferes with contractual obligations; and (vii) takes Plaintiffs' business property rights as specified herein. Plaintiffs further seek a declaratory judgment specifically finding the Ordinance to be unconstitutional because its provisions are unreasonable and the restrictions imposed by the

Ordinance are arbitrary, capricious, unreasonable, and fail to materially advance any legitimate state interest. Plaintiffs further seek a declaration that the actions of Defendants are subject to 42 U.S.C. §1983, *et seq.*

8.    The instant action is subject to the authority enumerated in *Goldblatt v. Hempstead,* 369 U.S. 590 (1962), being that the validity of this Ordinance is subject to analysis under the exercise of the City's "Police Power," and must be supported by a showing that the subject Ordinance is necessary to protect the "public health, safety, welfare or morals."

9.    All  parties are residents of, located or doing business in the City of Tampa, Hillsborough County, Florida, and all activities of the Defendant have occurred within the City of Tampa, therefore venue is proper in the United States District Court, Middle District of Florida, Tampa Division.

## III.  THE PARTIES

10.    Plaintiff, PEGGY E. JUSTUS (hereinafter JUSTUS) is an individual who performs movements to music which include basic contact between human beings and which are viewed by other patrons of the adult entertainment establishment in which she performs in the City of Tampa.

11.    Plaintiff, JOE REDNER, an individual, operates adult entertainment establishments within the City of Tampa. The adult entertainment establishments operated by REDNER, include as a primary component of their operation, the presentation of individuals who perform movements to music which include basic contact between human beings and which are viewed by other patrons of the adult entertainment establishment in which such performed movements occur.

12.    Defendant, CITY OF TAMPA, FLORIDA, (hereinafter the CITY) is an incorporated municipality of the State of Florida, a political subdivision duly organized and existing under the

5

laws of the State of Florida, duly governed by Chapter 119, Chapter 166, and Chapter 286, Florida Statutes. For the purposes of this action, naming the CITY as a Defendant is inclusive of all City agencies including, but not limited to, the City Council of the City of Tampa, Florida, the Mayor of the City of Tampa, Florida, the Tampa Police Department, and all Officials and Officers employed therein, the City Attorney's Office, the City Clerk's Office and all other municipal zoning and regulatory officials and employees.

## IV. GENERAL ALLEGATIONS AND FACTS
## GIVING RISE TO PLAINTIFFS' CLAIMS

13.    The CITY OF TAMPA had, and still has, legislation in place which restricts the location and/or operation of adult entertainment businesses, the subject provisions of which are contained in Chapter 6 and Chapter 27 of CITY OF TAMPA Code.

14.    Prior to any relevant action on the proposed Ordinance, the State of Florida had, and still has, in place a significant number of State Statutes addressing all forms of illegal activity and clearly encompassing any illegal activity allegedly associated with the operation of adult entertainment businesses, including but not limited to:

(a)    methods to control any illicit sexual acts, specifically "prostitution and lewd and lascivious acts," including criminal penalties for any substantiated violation (Chapter 796 of Florida Statutes);

(b)    the provisions of an entire chapter (Chapter 384 of the Florida Statutes) which deals with the extensive regulatory framework created to address sexually transmissible diseases;

(c)    methods to ensure the cleanliness of adult use establishments and remedies to swiftly

close any offending business which can be shown to be an actual threat to public health (Section 381.031, 381.061, 381.311 and other provisions of Chapter 381, Florida Statutes);

(d)     the applicable provisions of Chapters 381, 384, 775, 921, 948, 951, and 960, which deal with virtually every aspect, both social and criminal in nature, of HIV and AIDS;

(e)     the provisions of Chapter 933, Florida Statutes, which set forth the criteria for search and inspection warrants which would clearly allow appropriate law enforcement agencies to properly enter and search any allegedly offending establishment;

(f)     the provisions of Chapter 800.03, Florida Statutes, which makes it illegal to expose or exhibit one's sexual organs in public, or in private... "in a vulgar or indecent manner;"

(g)     the provisions of Sections 796.07 and 798.02, Florida Statutes, which prohibit engaging in lewd and lascivious activities;

(h)     the provisions of Section 827.04, Florida Statutes, which prohibits minors under the age of eighteen (18) from entering such establishments;

(i)     the provisions of Chapter 847, Florida Statutes, which prohibits the dissemination of obscene materials and/or performances; and

(j)     the myriad provisions of the Florida Statutes which punish criminal behavior and their resulting sentencing attributes which appropriately limit and punish any substantiated crime or violation of law.

15.     The activity colloquially referred to as "lap-dancing," the activity performed by Plaintiff, JUSTUS, and featured at Plaintiff, REDNER'S establishments, and the primary form of human contact at issue in the instant action, includes the contact between an individual exposing

7

specified anatomical areas in the context of rhythmically making pressurized, "whole-body" contact with an individual (patron) who does not expose specified anatomical areas, with the contact occurring during the previously specified movements to music and for a fee agreed to between the participants.

16.     This contact, in relation to the concern of the transmission of disease, poses absolutely **no risk** any greater than any other human contact in any other context.  This contact also does not meet the statutory definition of prostitution and PLAINTIFFS would submit that said activity is not lewd or lascivious.  In fact, it can never be shown at any time, that any of the human contact or social interaction performed by JUSTUS or taking place at REDNER'S establishments contribute in any way to the transmission of any disease or promote prostitution or lewdness.

17.     In addition to the above, the specified expressive contact serves as a manifestation of commercial speech which is intended to and does appeal to and motivate other viewers of the incidental expressive contact described herein to engage in such expressive contact as direct communicative message recipients, in exchange for appropriate remuneration.

18.     On December 3, 1999, the CITY purportedly adopted the subject Ordinance, which the CITY represents to be in "full force and effect."  A certified copy of Ordinance 99-265 is attached hereto as Exhibit "A."

19.     Plaintiffs assert their position, set forth in this Complaint, is legally sound and supported by fact and law.  The Defendant's actions, however, have created a *bonafide* controversy between the parties, and Plaintiffs are in doubt as to their rights, privileges and immunities with respect to the challenged Ordinance.  Plaintiffs require, therefore, a declaratory judgment declaring their rights, privileges and immunities.  There is a clear, present, actual, substantial and *bonafide* justiciable controversy between the parties.

8

20.    Plaintiffs have no adequate or speedy remedy at law.  No amount of money damages could adequately compensate the Plaintiffs for the irreparable harm described herein.  The Plaintiffs in this case wish to preserve their rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution. Neither damages, replevin, attachment nor any other legal remedy will suffice to safeguard the exercise of that right.  In order to constitute an "adequate" legal remedy, the remedy at law must be plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of justice.  It is unquestionable that no legal remedy would ever suffice to properly address state action which ultimately results in denying citizens rights guaranteed by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution.

21.    All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

22.    The acts, practices and jurisdiction of Defendants, as set forth herein, were and are being performed under color of state law and therefore constitute state action within the meaning of the Fourteenth Amendment to the Constitution of the United States.

23.    The adoption and enforcement of Ordinance 99-265 has caused and is causing direct and proximate damages to the PLAINTIFFS in addition to resulting in the deprivation of the Constitutionally protected rights described herein.

24.    As a direct and proximate result of the imposition and enforcement of Ordinance 99-265, the Plaintiffs will suffer direct and immediate damages due to the fact that Plaintiff JUSTUS cannot perform the activities described above, resulting in a loss of her "business" and revenue, and Plaintiff REDNER cannot provide a forum for the activities described above without being unreasonably limited in the number of performers or patrons that can be allowed or accommodated

9

by his adult entertainment establishments.

## COUNT I

## ORDINANCE 99-265 IS AN UNREASONABLE EXERCISE OF THE POLICE POWER AND THEREFORE RESULTS IN A DENIAL OF DUE PROCESS

25.     Plaintiffs re-allege and incorporate §§ 1 through 24, *supra*, as if fully set out herein.

26.     The Ordinance at issue herein denies due process in that it restricts harmless conduct without a reason and fails any "reasonableness" test, in that it restricts conduct that cannot be shown to contribute to the problems complained of within the Ordinance (prostitution, disease and lewd acts).

27.     The Ordinance at issue herein is an unreasonable exercise of the "Police Power," thereby resulting in denying Plaintiffs' due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

28.     There is no valid information or evidence which establishes any nexus between the human contact described herein and any identifiable "menace," nor any legitimate governmental interests.

29.     Accordingly, attempts to enforce the subject legislation against Plaintiffs are illegal and unconstitutional because the subject legislation fails to satisfy even the most rudimentary requirements for the exercise of the "Police Power."

30.     The Defendant cannot show that the imposition and the enforcement of the subject legislation advances any legitimate governmental interest as applied to the Plaintiffs' activities and Plaintiffs demand a jury trial to establish, through the presentation of relevant evidence and testimony, including expert testimony, the absence of any public necessity or any legitimate governmental interests

10

advanced by the subject legislation.

31.     Therefore, the enforcement of the subject legislation is an unconstitutional imposition of invalid legislation, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

32.     As a direct and proximate result of the imposition and enforcement of Ordinance 99-265, the Plaintiffs will suffer direct and immediate damages due to the fact that Plaintiff JUSTUS cannot perform the activities described above, resulting in a loss of her "business" and revenue, and Plaintiff REDNER cannot provide a forum for the activities described above without being unreasonably limited in the number of performers or patrons that can be allowed or accommodated by his adult entertainment establishments.

**WHEREFORE**, Plaintiffs pray for a declaratory judgment and supplemental relief, awarding the following:

a)      Declaring the subject legislation to be invalid and/or unreasonable.

b)      Granting a jury trial and allowing the Plaintiffs to show, through appropriate evidence and testimony, that the Ordinance in question is unreasonable because the restrictions imposed are not reasonably necessary for the accomplishment of the stated purpose of the Ordinance and are unduly oppressive upon Plaintiffs.

c)      Finding that the stated purpose of the Ordinance, and the menace against which it will allegedly protect can be remedied by other, less drastic protective steps.

d)      Finding that the Plaintiffs will suffer an unreasonable loss from the imposition of the Ordinance.

e)      Awarding costs and such other supplemental relief as may be just and appropriate.

## COUNT II

## ORDINANCE 99-265 RESULTS IN A TAKING OF BUSINESS PROPERTY
## WITHOUT DUE PROCESS OF LAW

33.     Plaintiffs re-allege and incorporate §§ 1 through 24, *supra*, as if fully set out herein.

34.     Plaintiffs performances and adult entertainment establishments are "businesses" which may not be deprived without due process of law.

35.     The right to pursue a lawful occupation or business is a property right. Property rights are only subject to limitations under the proper exercise of the three rights of government, those being: (i) the right of eminent domain (which requires just compensation for the legitimate taking of private property), (ii) the right of taxation, and (iii) the right of the "Police Power." The unreasonable denial of an occupation or business right is a denial of due process based on the "Police Power."

36.     Inhibitions of perfectly innocent acts or conduct cannot be made simply because such inhibitions would facilitate the enforcement of regulations which are within the legislative power to enforce under pre-existing legislative regulations.

37.     The "Police Power" extends to and permits legislation regulating only those activities necessarily limited for the protection of the public health, safety, morals or general welfare. Anything beyond this threshold of necessity must necessarily fall at the threshold of a Constitutional defense.

38.     Ordinance 99-265 clearly imposes restrictions of innocent acts to facilitate other regulations within the legislative power and extends beyond any "public necessity," thus rendering the subject legislation unconstitutional and unreasonable.

39.     Plaintiff JUSTUS desires to perform lap dancing and earns her living and describes her business specifically as providing this activity. The imposition of Ordinance 99-265 unreasonably

12

destroys JUSTUS' business and deprives her of the right to earn a living as she desires resulting in financial ruination and hardship.

40.     Plaintiff REDNER desires to provide a forum for the presentation of lap dancing and earns his living and describes his business as providing a forum for this activity. The imposition of Ordinance 99-265 unreasonably destroys REDNER'S business and deprives him of the right to earn a living as he desires, by limiting the number of dancers and patrons allowed within his subject adult entertainment establishments resulting in financial ruination and hardship.

41.     An unreasonable exercise of the "Police Power" is unconstitutional and void and the imposition of Ordinance 99-265 to facilitate the deprivation of Plaintiffs' business property rights results in a taking of same and entitles Plaintiffs to an award of damages for such wrongful deprivation.

**WHEREFORE**, Plaintiffs pray for a declaratory judgment and supplemental relief, awarding the following:

a)      Declaring the subject legislation to be invalid and/or unreasonable.

b)      Granting a jury trial and allowing the Plaintiffs to show, through appropriate evidence and testimony, that the Ordinance in question is unreasonable because the restrictions imposed are not reasonably necessary for the accomplishment of the stated purpose of the Ordinance and are unduly oppressive upon Plaintiffs.

c)      Finding that the stated purpose of the Ordinance, and the menace against which it will allegedly protect can be remedied by other, less drastic protective steps.

d)      Finding that the Plaintiffs will suffer an unreasonable loss from the imposition of the Ordinance.

e)      Awarding costs and such other supplemental relief as may be just and appropriate.

## PRAYER FOR ATTORNEY'S FEES AND DEMAND FOR JURY TRIAL

42.    The actions of Defendant complained of herein were and are actions under color of state law designed to deprive Plaintiffs of rights and privileges guaranteed by the Constitution and Laws of the United States.

43.    In the legitimate desire to pursue the rights and privileges guaranteed by the Constitution and Laws of the United States, the Plaintiffs have employed the undersigned attorneys to prosecute this action and have agreed to pay a reasonable fee for same.

44.    Accordingly, Plaintiffs are entitled to an award of attorney's fees as provided for by 42 U.S.C. § 1988.

45.    The Plaintiffs herein would demand a jury trial on all issues so triable.

Respectfully submitted,

Luke Charles Lirot, Esquire
LUKE CHARLES LIROT, P.A.
112 East Street, Suite B
Tampa, Florida 33602
(813) 221-9533 TEL
(813) 221-9175 FAX
Florida Bar Number 714836
Counsel for Plaintiffs

14

1

ORDINANCE NO. 99-265

2

3       AN ORDINANCE OF THE CITY OF TAMPA, FLORIDA,
4       AMENDING CITY OF TAMPA CODE, CHAPTER 14, OFFENSES,
5       ARTICLE II, MISCELLANEOUS OFFENSES, BY ENACTING
6       DIVISION 9., ADULT ENTERTAINERS DISTANCE
7       SEPARATION REQUIREMENT; PROVIDING LEGISLATIVE
8       FINDINGS, INTENT AND PURPOSE; DEFINITIONS; IMPOSING
9       A SIX (6) FEET DISTANCE SEPARATION BETWEEN ADULT
10      ENTERTAINERS AND PATRONS; PROVIDING FOR
11      EXCEPTIONS; PROVIDING FOR PENALTIES; PROVIDING FOR
12      SEVERABILITY; PROVIDING AN EFFECTIVE DATE.

13

14

15      WHEREAS, this Ordinance was considered by the City Council of the City
16 of Tampa, Florida, at a duly noticed public hearing as required by Florida Statutes
17 §166.041(3)(a); and

18

19      WHEREAS, this Ordinance does not change the actual list of permitted,
20 conditional, or prohibited uses within a zoning category, nor the actual zoning map
21 designation of a parcel of land, and therefore was not required to be adopted pursuant
22 to the procedures set forth in Florida Statutes §166.041(3)(c); and

23

24      WHEREAS, all interested persons were afforded required notice and an
25 opportunity to be heard in connection with this Ordinance at said public hearing.

26

27             NOW, THEREFORE,

28

29 BE IT ORDAINED BY THE CITY COUNCIL
30 OF THE CITY OF TAMPA, FLORIDA:

31

32      Section 1.    That Chapter 14, Article II, Division 9, is hereby enacted to
33 read as follows:

34

35      "DIVISION 9.  ADULT USE ENTERTAINER DISTANCE
36             SEPARATION REQUIREMENT

37

38      **Sec. 14-146.  Legislative findings, intent and purpose.**

39

40         (a)     City of Tampa hereby finds physical contact of a sexual nature
41 often occurs between persons performing at adult uses within the City and
42 patrons and other entertainers at such businesses; and such contact between
43 patrons and other entertainers commonly occurs in connection with illegal,
44 obscene, lewd, or lascivious acts; and

Certified as true
and correct copy.

EXHIBIT A

(b)     City of Tampa hereby finds such contact poses a risk to public health by enabling the transmission of disease; and it is the intent of the City to prevent illegal, obscene, lewd, and lascivious conduct and to prevent the transmission of disease within adult uses within the City; and

(c)     City of Tampa hereby finds that the prevention of sexual contact between patrons and entertainers at adult uses is unrelated to the suppression of free expression but serves to address the concerns raised in the findings herein; and

(d)     City of Tampa finds that the concerns raised  (i.e., criminal activity and/or transmission of disease) in the findings herein do not arise in the context of more traditional art forms and forums such as performing art centers and museums; and

(e)     City of Tampa hereby finds numerous other jurisdictions have sought to combat the adverse secondary effects of physical contact of a sexual nature in adult uses through ordinances prohibiting contact between entertainers and patrons and other entertainers, but have found such ordinances difficult, if not impossible to enforce absent a provision requiring a distance separation between entertainers and patrons and other entertainers; and

(f)     City of Tampa hereby finds numerous Courts have consistently held that municipal and county ordinances that require a mandatory distance of at least six (6) feet between adult entertainers and other entertainers and patrons of adult uses are constitutional; and

(g)     The City of Tampa hereby asserts that the following purposes of the Adult Use Entertainer Distance Separation Requirements set forth herein are matters of legitimate, substantial and compelling governmental interests:

(1)     To protect adult entertainers from exposure to diseases transmitted by physical contact of a sexual nature; and

(2)     To protect adult use patrons from exposure to diseases transmitted by physical contact of a sexual nature; and

(3)     To protect the public from exposure to disease transmitted by physical contact of a sexual nature; and

(4)     To reduce the amount of criminal activity occurring in adult uses, i.e., prostitution and lewd and lascivious acts.

**Certified as true and correct copy.**

2

**Sec. 14-147. Definitions.**

For purposes of this Division 9, the following terms shall have the meanings ascribed to them in this section, unless the context clearly indicates otherwise. All other terms and words shall have the meaning stated in Webster's Collegiate Dictionary, Ninth Edition, as subsequently revised and updated:

(a)    *Adult Use.*    An adult use includes and is defined as follows:

        (1)    *Adult entertainment establishment.* Any premises on which is offered to members of the public or any person, for a consideration, entertainment that has as its primary or dominant theme, subject matter depicting, describing or relating to specified sexual activities or specified anatomical areas, as defined in this section; "entertainment" as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances, either by single individuals or groups.

        (2)    *Adult theater.* An enclosed building or an enclosed space within a building used for presenting either filmed or live plays, dances or other performances, either by individuals or groups, that have as their primary or dominant theme, subject matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section, for observation by patrons therein.

        (3)    *Live model studio.* Any premises where there is provided for members of the public or for any person, for a consideration, live human models, whether male or female, displaying specified anatomical areas or featuring or in any way including, specified sexual activities.

(b)    *Entertainer:* one who provides entertainment, or provides a performance or show, including, but not limited to, persons who perform sexually oriented dance performances.

(c)    *Patron:* one who enters and remains in an adult use establishment to observe the activities therein.

3

**Certified as true
and correct copy.**

(d)  *Person*:          includes, but is not limited to any individual, firm, partnership, joint venture, syndicate or other group, or combination acting as a unit, association, corporation, estate, trust, business trust, trustee, executor, administrator, receiver, or other fiduciary, and shall include the plural as well as the singular

(e)  *Primary or dominant theme*:          main or governing characteristic; or first in degree or importance.

(f)  *Specified anatomical areas*:

    (1)  Less than completely and opaquely covered:

        a.  Human genitals or pubic region;

        b.  Buttocks;

        c.  Female breasts below a point immediately above the top of the areola;

    (2)  Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(g)  *Specified sexual activities*:

    (1)  Human genitals in a state of sexual stimulation or arousal;

    (2)  Acts of cunnilingus, fellation, masturbation, sexual intercourse, sodomy, whether actual or simulated;

    (3)  Fondling or other erotic touching of human genitals, pubic region, buttocks or female breasts.

**Sec. 14-148.  Prohibited Activities.**

(a)  No person within an adult use shall, within six (6) feet of another person, display or expose any specified anatomical area or engage in any specified sexual activity, provided, however, that this provision shall not apply to prevent:

(1)  adult use employees or entertainers at an adult use from using dressing room facilities that are not accessible or viewable by patrons or the public and so long as such use does not include the intentional

4

**Certified as true and correct copy.**

1         touching of the specified anatomical areas of another person or such
2         persons engaging in any specified sexual activity; or
3

4    (2)    any person from using bathroom facilities within an adult use so long
5         as such use does not include the intentional touching of the specified
6         anatomical areas of another person or such persons engaging in any
7         specified sexual activity.
8

9    (b)    No person who owns or operates an adult use shall knowingly, or with
10       reason to know, permit, suffer or allow any violation of subsection (a) above.
11

12    **Section 14-149.  Penalties.**
13

14         Any person who intentionally engages in conduct in violation of this
15    ordinance shall be subject to the provisions and penalties set forth in Section
16    1-6 of this Code, for each such violation."
17

18         Section 2.  That should any section, subsection or part of this Ordinance be
19    declared invalid by a court of competent jurisdiction it shall be severed from the
20    remaining parts and the remaining parts hereof shall not, in any way, be affected by
21    such determination as to the invalid part.
22

23         Section 3.  That all ordinances or parts of ordinances in conflict herewith are
24    hereby repealed to the extent of any conflict.
25

26         Section 4.  That this Ordinance shall take effect immediately upon becoming
27    a law.
28

29         PASSED AND ORDAINED BY THE CITY COUNCIL OF THE CITY OF
30    TAMPA, FLORIDA, ON **DEC 0 2 1999**   .
31

32    ATTEST:
33
34    *Janett S. Martin*
35    CITY CLERK              CHAIRMAN, CITY COUNCIL
36
37
38    PREPARED BY:             APPROVED BY ME ON **DEC 0 3 1999**
39
40
41    JAMES D. PALERMO          DICK A. GRECO, MAYOR
42    CITY ATTORNEY
43
44    K:\FILES\SEPARAT.2            State of Florida
                           County of Hillsborough

                           This is to certify that the foregoing is a
                           true and correct copy of *Ordinance* 99-265
                           on file in my office
                           Witness my hand and official seal this 3'd day
                           of *Dec*, 19 99
                           *Janett S. Martin*
                               CITY CLERK